Slip Op. 03 - 126

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

| | |
|---|---|
| ALLEGHENY LUDLUM CORPORATION, AK STEEL CORPORATION, NORTH AMERICAN STAINLESS, BUTLER ARMCO INDEPENDENT UNION, ZANESVILLE ARMCO INDEPENDENT ORGANIZATION, and UNITED STEEL WORKERS OF AMERICA, AFL-CIO/CLC, | : : : : : : : : |
|                 Plaintiffs, | :   **Before: MUSGRAVE, JUDGE** |
|        v. | : :   Court No.  01-01091 |
| UNITED STATES, | : : |
|           Defendant,<br>      and | : : : |
| ALZ, N.V., | : : |
|        Defendant-Intervenor. | : : : |

[Plaintiffs brought this action challenging (1) Commerce's decision to allow defendant-intervenor to remove its business proprietary information from the record after it decided not to participate in the administrative review in question and (2) Commerce's method of calculating the adverse facts available dumping margin which it subsequently assigned to defendant-intervenor. **Held:** Commerce's interpretation of 19 U.S.C. § 1677f to permit a party to withdraw its proprietary information during the course of the review is reasonable and in accord with the agency's practice. Furthermore, Commerce's decision not to use the public versions of defendant-intervenor's proprietary submissions in calculating the adverse facts available margin because the numbers contained therein were "ranged" plus or minus 10 percent, and were thus inaccurate and unreliable, was supported by substantial evidence and in accordance with law. Therefore,  plaintiffs' Motion for Judgment Upon the Agency Record is denied.]

Decided: September 29, 2003

*Collier Shannon Scott, PLLC* (*David A. Hartquist, David C. Smith, Jr.* and *Adam H. Gordon*) for Plaintiffs.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Ada E. Bosque*), and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Elizabeth Doyle*), of counsel, for defendant.

*Shearman & Sterling LLP* (*Thomas B. Wilner, Jeffery M. Winton* and *Christopher M. Ryan*) for defendant-intervenors.

## OPINION

This action arises from the first administrative review of the antidumping order on stainless steel plate in coils from Belgium for the period from November 4, 1998 through April 30, 2000. The United States Department of Commerce, International Trade Administration, ("Commerce") initiated this review on July 7, 2000 upon the request of members of the domestic steel industry including plaintiffs Allegheny Ludlum Corp., AK Steel Corp., North American Stainless, Buter Armco Independent Union, Zanesville Armco Independent Union, and the United Steelworkers of America, AFL-CIO/CLC (collectively, "Allegheny") and defendant-intervenor the Belgian steel company ALZ, N.V. and its affiliated U.S. importer, TrefilARBED, Inc. (collectively, "ALZ").

On August 14, September 5, and September 15, 2000 ALZ submitted both public and proprietary responses to Commerce's antidumping questionnaire and consented to the release of proprietary information pursuant to an administrative protective order ("APO"). Then, on October 5, 2000, ALZ made a timely request for withdrawal from the administrative review pursuant to 19 C.F.R. § 351.213(d) and also requested that all copies of its questionnaire responses be returned or destroyed. Allegheny objected, but on October 27, 2000 Commerce granted ALZ's request.

Allegheny requested that Commerce reconsider its decision, but on December 19, 2000 Commerce issued an internal decision memorandum affirming the decision to remove and destroy ALZ's information. Commerce also required Allegheny to destroy its copies of ALZ's proprietary information and any analysis of it. Allegheny then sought a temporary restraining order against this. The court ruled that Commerce could withdraw ALZ's proprietary information from the record, but instead of destroying these documents, the court ordered Allegheny to return its copies of the proprietary information to Commerce where it was to be placed under seal pending the completion of the administrative review and any legal action which might follow.

After ALZ's proprietary information was removed from the record, Commerce proceeded with the administrative review and issued *Stainless Steel Plate in Coils from Belgium; Preliminary Results of Antidumping Duty Administrative Review*, 66 Fed. Reg. 11559 (Feb. 26, 2001), in which it determined that ALZ had failed to cooperate to the best of its ability since it refused to participate in the review. As a result, Commerce calculated ALZ's dumping margin using total adverse facts available, assigning it the highest rate calculated from the petition, 16 percent. Commerce invited Allegheny to submit "public and probative information" for use in calculating the final results. In response, Allegheny argued that Commerce should assign ALZ a 38.90 percent margin using information from the public version of ALZ's proprietary questionnaire responses. Commerce declined to use the information submitted by Allegheny and instead updated the constructed value amount from the petition calculation using publically available information from ALZ's 1998, 1999, and 2000 financial statements. Based on this, Commerce calculated a 24.43 percent margin for ALZ in *Stainless Steel Plate in Coils from Belgium; Final Results of Antidumping Duty Administrative Review*, 66 Fed. Reg. 56272 (Nov. 7, 2001) ("*Final Results*").

There are three issues raised by Allegheny in this action. First, whether Commerce was correct in allowing ALZ to revoke its consent to the disclosure and use of the proprietary information it had placed on the administrative record. Second, if the Court finds that Commerce was correct in allowing ALZ to revoke its consent, whether it was reasonable for Commerce to use a "constructed value to price" methodology to calculate ALZ's total adverse facts available rate. Finally, if the Court finds this methodology reasonable, whether Commerce should have updated the U.S. price side of the calculation (not just the constructed value side) in order to make them methodologically comparable and consistent. For the reasons which follow, the Court holds that Commerce acted reasonably in permitting ALZ to withdraw its proprietary information from the administrative record and also holds that Commerce's method of calculating the adverse facts available rate for ALZ is supported by substantial evidence and in accordance with law. Therefore, Allegheny's Motion for Judgment Upon the Agency Record is denied.

### *Standard of Review*

The Court shall uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). This standard requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."

*Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). In reviewing whether Commerce's interpretation of the antidumping statutes is in accordance with the law, the Court considers "whether Commerce has directly spoken to the precise question at issue," and if not, whether the agency's interpretation is reasonable. *Pesquera Mares Australes Ltda. v. United States*, 24 CIT 443, 444 (2000) (quoting *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984).

### *Discussion*

Regarding the first issue, Allegheny argues that Commerce's interpretation permitting a party to revoke its consent to the disclosure and use of its proprietary information is contrary to other regulations and APO practice, and is therefore impermissible. Mem. of Law in Supp. of Pl.s' Mot. for J. Upon the Agency R. ("Pl.s' Br.") at 13. Specifically, Allegheny cites 19 C.F.R. § 351.306(b) which provides that an authorized applicant may retain proprietary information subject to the APO and may place that information on the record in subsequent administrative reviews if it is relevant to an issue in the later review. *Id.* Allegheny states that in practice Commerce normally permits authorized parties to use business proprietary information in the two consecutive administrative reviews following the review in which the information was obtained. *Id.* 13-14 (citing *Antidumping and Countervailing Duty Proceedings: Administrative Protective Order Procedures; Procedures for Imposing Sanctions for Violations of a Protective Order*, 63 Fed. Reg. 24,391, 24,398 (May 4, 1998)). Thus Allegheny concludes that it was entitled to retain ALZ's information not only for the review at issue, but also for two subsequent reviews.

Allegheny likens the facts of the present situation to those in *Notice of Final Determination*

*of Sales at Less Than Fair Value: Live Cattle from Canada*, 64 Fed. Reg. 56739 (Oct. 21, 1999) ("*Live Cattle*"), where Commerce denied a request by one of the respondents to withdraw its proprietary submissions on the ground that this would allow the respondent to manipulate the administrative process and prevent an accurate determination of antidumping rates. In *Live Cattle* Commerce limited its investigation to the six largest Canadian cattle producers because the total number of producers was "overwhelming." *Id*. at 56742. On the day Commerce was scheduled to issue its preliminary determination, one of the six producers, Schaus, submitted information that "substantially altered its reported costs." *Id*. Commerce did not have time to incorporate this new information in calculating the preliminary results, but noted that it would likely result in a higher margin. *Id*. Commerce subsequently confirmed that the newly submitted data increased Schaus's dumping margin from 5.43 percent to 15.69 percent. *Id*. Schaus then notified Commerce that it "had decided to decline verification and withdrew all questionnaire responses from the record of the investigation." *Id*. Commerce denied Schaus's request to withdraw its information and amended its preliminary determination, raising Schaus's antidumping rate to 15.69 percent and raising the "all others" rate from 4.73 percent to 5.57 percent." *Id*. at 56743. In the present case, Allegheny alleges that ALZ is similarly manipulating the process to receive a lower rate than it would have received had it cooperated with Commerce during the review. Pl.s' Br. at 19-20.

Commerce asserts that the plain meaning of Section 777 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677f, supports an inference that a party's consent to the release of proprietary information is revocable at any time prior to the conclusion of the proceeding. Def.'s Mem. In Opp'n to Pl.s' Mot. For J. Upon the Agency R. ("Def.'s Br.") at 13. Section 1677f provides in relevant part that "information submitted to the administering authority or the Commission which

is designated as proprietary by the person submitting the information shall not be disclosed to any person *without the consent* of the person submitting the information." 19 U.S.C. § 1677f (emphasis added). Commerce argues that "[t]he plain meaning of the word 'consent' suggests that it can be withdrawn." Def.'s Br. at 14. Moreover, Commerce notes that § 1677f is a limited exception to the Trade Secrets Act, 18 U.S.C. § 1905, which generally prohibits an agency from disclosing business proprietary information. *Id.* at 12. In response to Allegheny's assertion that Commerce's interpretation is contrary to APO practice, Commerce notes that "the APO is not a source of independent authority," but "is a product of 19 U.S.C. § 1677f" and must be interpreted in light of the consent requirement of that statute. *Id*. at 16. Commerce concludes that its established practice -- to allow a party to withdraw consent and remove the party's business proprietary information from the record and require other parties to the APO to return or destroy such information -- is at least a reasonable interpretation of the statute. *Id*. at 11-12.

Commerce also argues that the present case is distinguishable from *Live Cattle* because it concerns an administrative review rather than a less than fair value investigation, and the removal of ALZ's information did not have an effect on the "all others" rate. Def.'s Br. at 17 (citing Commerce's Issues and Decisions Memorandum (Oct. 24, 2001), Public R. Doc. 52, at 13). Commerce states that *Live Cattle* is the "sole exception to [its] long-standing practice of removing proprietary data from the record upon the withdrawal of consent" and was a "unique situation" which "did not establish 'precedent' for the agency." *Id*. (citing Commerce's Memorandum regarding the Return or Destruction of ALZ, N.V. ("ALZ") Questionnaire Responses and (Dec. 19, 2000), Public R. Doc. 36, and Commerce's Issues and Decisions Memorandum (Oct. 24, 2001), Public R. Doc. 52).

The Court finds that Commerce's interpretation of 19 U.S.C. § 1677f is reasonable. The Court agrees that the "consent" requirement in 19 U.S.C. § 1677f suggests that release of proprietary information is voluntary, and therefore may be revoked. Furthermore, the Court finds Commerce's reasoning in its *Live Cattle* determination noteworthy.

> The Department must balance any potential negative impact that refusing to allow a respondent to withdraw information may have on its ability to obtain business proprietary information in future proceedings, against any negative impact on the integrity of the proceeding if withdrawal is permitted, and determine where the public interest lies.
>
> The Department does not have subpoena power. The submission of information is voluntary. To administer the antidumping law, the Department depends heavily upon the willingness of the parties to provide extensive business proprietary information. As a result, there is a public interest in preserving the trust of companies subject to its proceedings that such information will have limited use and will remain largely within the control of the companies submitting information. However, once a party voluntarily submits business proprietary information in an antidumping proceeding, the submitting party relinquishes some control over the information to the Department. For example, after the Department issues a final determination, a submitting party may not withdraw its proprietary information. Once the record of a proceeding is closed, no information may be added to, or withdrawn from the administrative case record.
>
> Equally compelling is the public's interest in the agency enforcing the antidumping law and preserving the integrity of its proceedings. While there is no statutory provision expressly dealing with the withdrawal of business proprietary information once it has been submitted, the courts have recognized "the inherent power of an administrative agency to protect the integrity of its own proceedings." *Alberta Gas Chemicals, Ltd. v. Celanese Corp.*, 650 F.2d 9, 12 [(2d Cir. 1981)]. Thus the agency has the discretion to deny a respondent's request to withdraw information where it is necessary to preserve the fundamental integrity of the process and the remedial purpose of the law.

> In practice, the Department has allowed submitting parties to withdraw their business proprietary submissions from the administrative record. [citations omitted] In such cases, the Department bases the company's margin on facts available using an adverse inference where warranted. It is the Department's ability to use adverse facts available that insures that a company will not benefit by a refusal to participate in a proceeding. [footnote omitted] Because investigated companies normally account for substantially all exports to the United States, the elimination of the non-cooperative company from the "all others" rate in that situation is likely to be of marginal significance. Thus, the adverse facts available rule normally enables the Department to permit withdrawal of proprietary information while protecting the integrity of the process.
>
> In the present case, however, the adverse facts available rule cannot serve that function. Substantially all future exports of live cattle, which will be subject to the "all others" rate if an antidumping duty order is issued, would inappropriately benefit from Schaus' refusal to participate.

*Live Cattle*, 64 Fed. Reg. at 56743. As the quoted text demonstrates, *Live Cattle* was a unique situation where the use of adverse facts available could not protect the integrity of the proceedings. Although Allegheny challenges the particular adverse facts available margin Commerce applied to ALZ, it does not argue that the integrity of this review cannot be preserved through the use of adverse facts available. Since ALZ is the only respondent in this review and the "all others" rate will not be affected by its withdrawal, there is no logical reason why an adverse facts available rate cannot serve Commerce's purposes. Thus the Court concludes that Commerce's decision is both reasonable and in accord with the agency's practice.

Turning to the second issue, Allegheny argues that Commerce erred in determining ALZ's adverse facts available dumping margin by recalculating a prior margin, which was determined through a comparison of constructed value to U.S. price, when it could have used the public

information submitted by ALZ to make a comparison of Belgian price to U.S. price. Pl.s' Br. at 22-23. Allegheny notes that, pursuant to Section 773(a) of the Tariff Act of 1930, 19 U.S.C. § 1677b(a)(1)(B), a comparison of home market price to U.S. price is preferred over a constructed value to U.S. price comparison. *Id*. at 27. Allegheny also argues that precedent is found in *Smith Corona Corp. v. United States*, 16 CIT 562, 796 F. Supp. 1532 (1992), where the court permitted Commerce to use the public version of proprietary data, which had been withdrawn, to calculate a dumping margin for the respondent.

Commerce argues that the public information submitted by ALZ in the present action is inherently unreliable because, in accordance with 19 C.F.R. § 351.304(c)(1), the numbers contained in the public versions of proprietary documents are "ranged" plus or minus 10 percent by the party submitting the information. Def.'s Br. at 19. Therefore this information cannot be used as the basis for an accurate "price-to-price" comparison. *Id.* Commerce contends that *Smith Corona* does not support the use of ranged data, and argues that the decision merely upholds Commerce's practice of updating information from the original petition with public information submitted by the respondent to calculate the antidumping margin. *Id.* at 20. In the present case, Commerce argues that it similarly took the petition rate and updated it using ALZ's public financial statements, which it found to be less uncertain than the ranged data. *Id*. at 19-20.

The Court agrees with Commerce. As an initial matter, regarding the precedent established by *Smith Corona*, the issue in that case was whether the respondent retained control over both the proprietary *and* the public versions of its information, so that the public version could not be used when the proprietary version had been withdrawn. *See* 802 F. Supp. at 468. There is no indication that the accuracy of the public data was raised as an issue. Thus *Smith Corona* is inapposite to the

issue presently before the Court.

Commerce is considered to be "in the best position . . . to select an adverse facts rate that will create the proper deterrent to ensure that respondents cooperate with its investigations and to ensure a reasonable margin." Def.'s Br. at 19 (citing *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000)). Nevertheless, its discretion is not without bounds. "An adverse facts available rate must be 'a reasonably accurate estimate of respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance.'" *Id.* (quoting *De Cecco*, 216 F.3d at 1032). In this action, it is undisputed that the data in the public versions of ALZ's proprietary questionnaire responses were ranged, and at oral argument counsel for defendant-intervenors demonstrated the high degree of variation in margins that can result depending on the extent to which the numbers used in the calculation are adjusted up or down. *See* Oral Argument Tr. at 37-39. Since these data were, by design, inaccurate, the Court holds that Commerce's decision not to use them in calculating an adverse facts available margin for ALZ is supported by substantial evidence and in accordance with law.[1]

As to the third issue, Allegheny argues that if the Court sustains Commerce's use of updated

---

[1] Allegheny also argues that it is unreasonable for Commerce to assign a 24.43 percent margin to ALZ as adverse facts available when an analysis Allegheny performed on ALZ's proprietary data showed that ALZ's margin of dumping was "in excess of 29 percent." Pl.s' Br. at 25. Commerce rejected the use of this information on the ground that it was impossible to determine the accuracy of Allegheny's calculations since the underlying documents were no longer part of the record. *See* Commerce's Memorandum regarding the Return or Destruction of ALZ, N.V. ("ALZ") Questionnaire Responses and (Dec. 19, 2000), Public R. Doc. 36, at 4-5; Commerce's Issues and Decisions Memorandum (Oct. 24, 2001), Public R. Doc. 52, at 10-11. Since the Court has upheld Commerce's decision to remove ALZ's proprietary information from the record, there is nothing in the administrative record to support Allegheny's allegation that ALZ's actual margin was "in excess of 29 percent."

information from the petition to calculate the constructed value, the Court should also require Commerce to update the net U.S. price to which the constructed value is compared. Pl.s' Br. at 32-33. As this would require Commerce to use the ranged public versions of ALZ's proprietary data, which are inaccurate, to update the U.S. price, the Court holds that this would be unlawful.

### *Conclusion*

For the foregoing reasons, Allegheny's Motion for Judgment Upon the Agency Record is denied and the *Final Results* are sustained.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: September 29, 2003
        New York, New York